## PIPER, Appellant, *v.* PIPER, Appellee.

The discretion vested in the judge of probate, to make, from the personal estate of a deceased husband, an allowance for the present support of the widow, is a legal discretion, to be judiciously exercised, subject to the revision and correction of the Supreme Court.

Where a husband died at the age of eighty-one, leaving a widow eighty years old without any property in her own right, real estate worth more than four thousand dollars, and personal estate to the amount of one thousand dollars, and owed but five hundred and forty dollars, the husband and wife having lived together about sixty years, during which they had brought up respectably a family of ten children, of whom the youngest was thirty-seven years of age, and had accumulated more than twenty-five thousand dollars' worth of property, of which about sixteen thousand dollars had been given and conveyed by the husband, with the wife's assent, to their children before his death, and four thousand dollars more had been conveyed by him to one of their children without her assent, — *held*, that two hundred and fifty dollars was not an unreasonable allowance to be made, by the judge of probate to the widow, for her present support, out of the personal estate.

Where such husband before his death had executed a will, giving therein to the widow a legacy of one dollar, but made no provision whatever for her support, either in the will or otherwise, and the widow subsequently received of the executor the legacy of a dollar, and gave a receipt therefor, but immediately tendered the money back, demanded a surrender of the receipt, and filed with the judge of probate a waiver in writing of the provisions of the will, accompanied by a petition for an allowance out of the personal estate of the testator, — *held*, that the widow could not, on these facts, be presumed to have intended to waive her right to an allowance, and that she was not estopped by her receipt for the nominal legacy, given and retained under such circumstances, from insisting upon her legal rights, as the widow of the testator, to an allowance for her present support.

APPEAL, taken March 31, 1855, by George W. Piper, executor of the last will of Francis Piper, late of Tuftonborough, deceased, from a decree of the judge of probate for this county, made March 6, 1855, allowing to the appellee, Abigail Piper, widow of said Francis, out of the personal estate of said deceased, the sum of two hundred and fifty dollars, for her present support. Two reasons of appeal are set forth by the appellant:

1. Because, if said Abigail was entitled to any allowance, the sum named in the decree is too large, the said Francis having

made (though not by his will) ample provision for her support, which she has accepted.

2. Because said Abigail was named in the will of said Francis as a legatee, and had received the legacy given her thereby before she waived the same, and before said decree was made.

The case was referred to an auditor, before whom a hearing was had, and his report was presented at the present term. From this it appears that Francis Piper died testate in September, 1854, leaving the appellee, his widow, and children, five sons and four daughters. One daughter had previously deceased, leaving issue. By the will, dated September 11, 1854, and proved October 3, 1854, the testator gave to his widow and each of the surviving children, except Clarissa, and to the children of his deceased daughter, a nominal legacy of one dollar each. For Clarissa, who appears to have been partially insane, he provided a comfortable support and maintenance out of his estate. All the residue and remainder of his estate he gave to a grandson, son of the appellant, and appointed the appellant to be guardian of that grandson, and executor of his will. Prior to the spring of 1853 the testator had conveyed to each of four sons a farm worth $2000, and to the fifth, Greenleaf, real estate worth $3000 to $4000. To four daughters he had given $1000 each, upon their marriage. In the spring of 1853 he conveyed to Greenleaf his home farm in Tuftonborough, on which the family had lived about forty years, and which cost $4000, taking from him an agreement to support his mother, if she would sign the deed of the farm, which she refused to do. She had before signed the deeds of all the real estate conveyed to the five sons severally. After the conveyance of the home farm to Greenleaf, the testator removed to another place, leaving his wife with Greenleaf, where she remained about three months, when she went to reside with a daughter. When the testator removed from the home farm, he left for the use of his wife there about one hundred and thirty dollars' worth of household furniture, about eighty dollars' worth of which she afterwards removed to her daughter's. About a year after the testator abandoned his wife, she applied

personally to him to know when he was going to let her come and live with him.   He told her, never ; that he had provided a place for her, and she must go there and live.   No reason is found to have existed for this treatment of the old lady, other than that it is to be inferred to have taken place, because she refused to relinquish her dower and homestead in the home farm conveyed to Greenleaf.

At the time of his death the testator was eighty-one, and the appellee eighty years of age.   They commenced life poor, and together, by their joint efforts, had accumulated the property hereinbefore mentioned, amounting to about $20,000 ; and the property undisposed of before the testator's death was inventoried at $5,200.   The whole amount of debts and claims against the estate was only $540 ; the amount of personal property $1000.

On the first of March, 1855, the appellant paid to the appellee the sum of one dollar, and took from her a receipt in full for the legacy of that amount to her in the will.   This money was immediately afterwards tendered back to the appellant, and a surrender of the receipt demanded.   The appellant stated to two witnesses, at or about the time this receipt was obtained, that when the appellee signed the receipt he did not think she was relinquishing any thing more than her legacy.   On the sixth of March, 1855, the widow, by a writing filed with the judge of probate, waived the provisions made for her in the testator's will, and petitioned for an allowance from the personal estate, for her present support, and the decree allowing her two hundred and fifty dollars, (from which the present appeal was taken,) was made on the same day.

Dower in the lands of which the testator died siezed has since been assigned to the appellee, and she has settled her claim for homestead in the farm conveyed to Greenleaf, for the sum of $500, and an annuity of $150 per annum during life.

At the death of the testator, the oldest child of himself and the appellee was fifty-six years old, and the youngest thirty-seven.

*Batchelder,* for the appellant.

*Emerson,* for the appellee.

FOWLER, J.   Upon the facts found by the auditor's report, and shown by the copies in this case, the first question presented is that raised by the second reason of appeal assigned by the appellant, namely, whether the appellee was estopped, by receiving the legacy of one dollar and giving her receipt therefor, under the circumstances stated by the auditor, from afterwards waiving the provisions of the will, and claiming her allowance out of the personal estate of her deceased husband.

It might well be doubted whether a nominal legacy of one dollar only to the widow is such a provision as the law contemplates it to be necessary for her to waive before being entitled to claim an allowance for her present support.   It would seem, that in order to render a provision for the widow equivalent to her right to an allowance, it should be something substantial, affording to her the means of subsistence and decent attire at least, until dower in the real estate could be assigned to her.   Laws of 1830, 337, sec. 17 ; Rev. Stat., chap. 165, sec. 2 ; Laws of 1844, chap. 138.

But, admitting the construction of the law in accordance with which the parties in this case have acted, we think it quite clear that the mere receipt of the nominal legacy could work no forfeiture of the right to an allowance, unless it were received understandingly, and with the intention of effecting that result.   And all the facts in the present case go to prove conclusively, that neither the appellee nor the appellant so understood or intended the payment and receipt of the dollar legacy.   The great age of the appellee, the fact that no provision whatever for her support had been made in the will, or otherwise, except upon a condition repugnant to her self-respect and personal independence, her entire destitution, and her conduct in at once tendering back the money and demanding the surrender of the receipt, together with her application for the allowance within five days after the receipt had been given, all satisfy us fully that there could have been no intention of the appellee to relinquish her claim to the

Piper *v.* Piper.

personal estate, when she received the nominal legacy. The evidence before the auditor indicates quite decisively that the legacy was paid and received under a misapprehension — an idea that it was necessary, to facilitate the settlement of the estate, as a mere matter of form — and with an understanding by both parties, that the rights of the appellee were to be in no way prejudiced thereby. We have, therefore, no hesitation in holding that the receipt of the legacy by the appellee, under these circumstances, did not preclude her from waiving the provision made for her in the will, and demanding an allowance out of the personal estate for her present support.

The only remaining question relates to the reasonableness of the allowance of two hundred and fifty dollars.

The discretion vested in the judge of probate, to make from the personal estate of the deceased husband an allowance for the present support of the widow, is a legal discretion, to be exercised judiciously and discreetly, subject to be revised and corrected by this court as the supreme court of probate. *Hubbard* v. *Wood*, 15 N. H. 74; *Mathes* v. *Bennett*, 1 Foster 188; *Adams* v. *Adams*, 10 Metcalf 170; *Kingman* v. *Kingman*, 11 Foster 182.

For about sixty years the testator and appellee, commencing life poor, lived and labored together, nurtured and educated respectably a family of ten children, acquired an estate of more than twenty-five thousand dollars, and distributed sixteen thousand dollars' worth of it to their children, as they were married and settled in life. Then, because the appellee refused to relinquish her interest in the old family homestead to a son who had already received one or two thousand dollars more of the family property than any other child, the testator abandoned her to the tender charities of that son, without the slightest means of support except the use, by sufferance, of a scanty supply of household furniture, ever afterwards rudely and harshly refused to live with her, in his will made no provision whatever for her support, and died leaving more than four thousand dollars in real estate, and one thousand dollars' worth of personal property, and claims

against the estate to the amount of only five hundred and forty dollars. We all think it was not, under these circumstances, an indiscreet or injudicious exercise of the discretion vested in the judge of probate, for him to allow the appellee two hundred and fifty dollars out of the personal estate, for her present comfortable subsistence and clothing. Indeed we can hardly conceive of a stronger case, for a liberal exercise of the legal discretion which the statute reposes in that tribunal, than was here presented; and we are unable to perceive that any party in interest has just cause of complaint against the proceedings in the probate court.

The decree of the judge of probate must therefore be affirmed, with costs to the appellee.